Maxim B. Litvak (CA Bar No. 215852)
PACHULSKI STANG ZIEHL & JONES LLP
150 California Street, 15th Floor
San Francisco, CA 94111
Telephone: 415/263-7000
Facsimile: 415/263-7010
Email: mlitvak@pszjlaw.com

Counsel for PLC Diagnostics, Inc. and NMS Labs

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| In re: | Case No. 16-52307-DM |
| iNDx Lifecare, Inc., | Chapter 11 – R.S. No. 1 |
| Debtor. | **MOTION OF PLC DIAGNOSTICS, INC. AND NMS LABS FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 OR, ALTERNATIVELY, MOTION FOR ORDER CONVERTING THIS CASE TO CHAPTER 7; MEMORANDUM OF POINTS AND AUTHORITIES** |
| | Hearing Date: September 7, 2016<br>Time: 11:30 a.m.<br>Place: 280 South First Street<br>Courtroom 3070<br>San Jose, CA 95113<br>Judge: The Hon. Dennis Montali |

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| I. | INTRODUCTION | 2 |
| II. | RELIEF REQUESTED | 3 |
| III. | RELEVANT FACTUAL BACKGROUND | 3 |
|  | A. The Debtor's Prior Business and Relationship with PLC | 3 |
|  | B. The Debtor's Relationship with NMS | 4 |
|  | C. Asserted Claims of Eurosimillas, S.A. | 5 |
|  | D. The Debtor's Lack of Funding and Termination of Operations | 6 |
|  | E. The Debtor's Bankruptcy Filing on the Eve of Foreclosure | 6 |
| IV. | LEGAL ARGUMENT | 7 |
|  | A. The Automatic Stay Should Be Lifted for "Cause" - 11 U.S.C. § 362(d)(1) | 7 |
|  | B. The Automatic Stay Should Be Lifted Due to the Debtor's Lack of Equity and Inability to Reorganize - 11 U.S.C. § 362(d)(2) | 9 |
|  | C. Alternatively, the Chapter 11 Case Should Be Converted to Chapter 7 Under Section 1112(b) of the Bankruptcy Code | 11 |
| V. | CONCLUSION | 14 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Baldino v. Wilson (In re Wilson)*,
  116 F.3d 87 (3d Cir. 1997) ............................................................................................................ 8
*Delaney-Morin v. Day (In re Delaney-Morin)*,
  304 B.R. 365 (B.A.P. 9th Cir. 2003) ............................................................................................ 8
*In Great American Pyramid Joint Venture*,
  144 B.R. 780 (Bankr. W.D. Tenn. 1992) .................................................................................... 12
*In re Brotman Med. Ctr., Inc.*,
  No. 08-1056, 2008 WL 8444797, at *5 (B.A.P. 9th Cir. Aug. 15, 2008) ..................................... 8
*In re Chevy Devco*,
  78 B.R. 585 (Bankr. C.D. Cal. 1987) ........................................................................................... 9
*In re Citi-Toledo Partners*,
  170 B.R. 602 (Bankr. N.D. Ohio 1994) ...................................................................................... 12
*In re Conejo Enters., Inc.*,
  96 F.3d 346 (9th Cir. 1996) .......................................................................................................... 8
*In re DB Capital Holdings, LLC*,
  454 B.R. 804 (Bankr. D. Colo. 2011) ........................................................................................... 8
*In re Edwards*,
  454 B.R. 100 (B.A.P. 9th Cir. 2011) ............................................................................................ 8
*In re Gundrum*,
  509 B.R. 155 (Bankr. S.D. Ohio 2014) ........................................................................................ 8
*In re H.T. Pueblo Properties, LLC*,
  11–24718, 2011 WL 6962754, at *8 .............................................................................................. 9
*In re Koerner*,
  800 F.2d 1358 (5th Cir. 1986) .................................................................................................... 11
*In re Rubenstein*,
  71 B.R. 777 (9th Cir. B.A.P. 1987) ............................................................................................ 11
*In re Timbers of Inwood Forest Assoc., Ltd.*,
  808 F.2d 363 & n. 12-13 (5th Cir. 1987) (en banc) .................................................................... 10
*Johnston v. Gem Dev. Co, (In re Johnston)*
  149 B.R. 158 (9th Cir. B.A.P. 1992) .......................................................................................... 12
*Stewart v. Gurley*,
  745 F.2d 1194 (9th Cir. 1984) .................................................................................................... 10
*Sun Valley Newspapers, Inc. v. Sun World Corp. (In re Sun Valley Newspapers, Inc.)*,
  171 B.R. 71 (B.A.P. 9th Cir. 1994) ............................................................................................ 10
*United Sav. Ass'n Tex. v. Timbers of Inwood Forest Assoc., Ltd.*,
  484 U.S. 365 (1988) .................................................................................................................... 10
*United Savings Assoc. of Texas v. Timbers of Inwood Forest Associates, Ltd.*,
  484 U.S. 365, 108 S.Ct. 626 (1988) ............................................................................................ 10

**Statutes**
11 U.S.C. § 1112 ................................................................................................................... 1, 3, 11
11 U.S.C. § 362 .............................................................................................................................passim

**Rules**
Fed. R. Bankr. P. 4001 ................................................................................................................ 1, 3

**TO THE HONORABLE DENNIS MONTALI, UNITED STATES BANKRUPTCY JUDGE, THE DEBTOR AND ITS COUNSEL, THE UNITED STATES TRUSTEE AND OTHER INTERESTED PARTIES:**

Movants PLC Diagnostics, Inc. ("***PLC***") and NMS Labs ("***NMS***" and together with PLC, "***Movants***") hereby move this Court (the "***Motion***") for an order granting relief from the automatic stay under 11 U.S.C. § 362(d) against Debtor iNDx Lifecare, Inc. (the "***Debtor***") to permit Movants to proceed to exercise their rights and remedies under applicable non-bankruptcy law, including foreclosure, with respect to the Debtor's intellectual property assets, primarily consisting of patents and patent applications (the "***Collateral***"). Grounds for granting relief include: (1) failure of adequate protection to Movants, and (2) the Debtor's lack of equity in the Collateral and inability to reorganize. *See* 11 U.S.C. § 362(d)(1) and (d)(2).

Alternatively, in the event that the Court does not grant relief from stay as requested herein, Movants seek the conversion of this case to chapter 7. *See* 11 U.S.C. § 1112(b).

The Motion is brought pursuant to 11 U.S.C. §§ 362(d) and 1112(b), Federal Rule of Bankruptcy Procedure 4001(a), and Local Bankruptcy Rule 4001.

**WHEREFORE**, this Court should grant relief from the automatic stay in favor of Movants with respect to the Collateral or, alternatively, convert this case to chapter 7, and approve such other and further relief to which Movants may be entitled.

Dated: August 24, 2016                    PACHULSKI STANG ZIEHL & JONES LLP

By: */s/ Maxim B. Litvak*
    Maxim B. Litvak

Counsel for PLC Diagnostics, Inc. and NMS Labs

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

The Debtor filed this case on the eve of Movants' foreclosure sale of the Collateral scheduled for August 12, 2016. The filing was strictly to stop the foreclosure from happening, without any semblance of a restructuring strategy or any apparent funding source to satisfy the administrative expenses of this chapter 11 case.

The Debtor was an early stage biomedical engineering company created in 2013 in order to bring certain patents to life in the form of commercially marketable products. The Debtor's patents originated with PLC and were to be exploited by the Debtor jointly with PLC and NMS. Unfortunately, the Debtor was unsuccessful in developing any viable products. The Debtor's funding, which totaled nearly $5.5 million over the years, ran dry. By Spring 2016, the Debtor's finances were so dire that Movants were required to fund the Debtor's payroll obligations and routine patent renewal fees. The Debtor's business was subsequently shut-down, its employees were terminated, and its rental space was vacated. Movants then proceeded to notice a public foreclosure sale of the Collateral for August 12, 2016. Despite specific notice of the sale to prospective buyers and widely-disseminated publication notice, no third parties expressed any interest in acquiring the Collateral, aside from Movants.

On the eve of the foreclosure sale, the Debtor filed this case. The Debtor currently has no employees, no operations, no money with which to maintain the Collateral, and no exit strategy. The sole purpose of the filing was to prevent Movants from proceeding with the foreclosure and exercising their non-bankruptcy rights as secured creditors. By letter dated August 12, 2016, Movants requested that the Debtor confirm that it has the funding and expertise to maintain its patents and patent applications on a postpetition basis. Movants have not received a substantive response to that fundamental question, and the Debtor has yet to file a substantive pleading in this case or any disclosures as to its cash position.

Based on the risk to Movants' collateral position and the Debtor's inability to fund this case or to propose a viable plan, Movants request that this Court grant immediate relief from stay with respect to the Collateral under sections 362(d)(1) and (d)(2) of chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***"). Alternatively, in the event that the Court does not grant relief from stay, Movants seek the conversion of this case to chapter 7 based on the substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation under section 1112(b) of the Bankruptcy Code.

## II.

## RELIEF REQUESTED

By this Motion, Movants seek relief from the automatic stay under section 362(d) of the Bankruptcy Code to proceed to exercise all of Movants' rights and remedies against the Collateral under the loan documents described below, including foreclosure. Movants also request that any order granting this Motion be effective immediately, waiving the 14-day stay contemplated by Bankruptcy Rule 4001(a)(3).

Alternatively, Movants seek an order converting this case to chapter 7 under section 1112(b) of the Bankruptcy Code.

## III.

## RELEVANT FACTUAL BACKGROUND

**A.     The Debtor's Prior Business and Relationship with PLC**

The Debtor was created in December 2013 as a joint venture between PLC and iNDx Technology, Inc. for the purpose of commercializing the Q-SENS technology developed by PLC. The Q-SENS technology is a next generation, connected point-of-care system that allows medical professionals and researchers to detect certain biomarkers with laboratory-level sensitivity and high specificity in a small, portable and inexpensive device, capable of communicating wirelessly.

Pursuant to a *Joint Venture Agreement* dated as of December 27, 2013 and associated *Intellectual Property Transfer Agreement* as of the same date, PLC transferred to the Debtor the intellectual property covering the Q-SENS technology that had been developed by PLC (the "***IP***"),

primarily consisting of various patents and patent applications. True and correct copies of the Joint Venture Agreement and Intellectual Property Transfer Agreement are attached as Exhibit A and Exhibit B, respectively, to the Declaration of Reuven Duer filed in support of the Motion.

In consideration for the transfer of the IP to the Debtor, PLC received a *Secured Convertible Promissory Note* from the Debtor in the original principal amount of $3,100,000 (the "**PLC Note**"). The obligations under the PLC Note are secured by valid and perfected security interests in the Collateral, which includes the IP and all future additions thereto. True and correct copies of the PLC Note and associated *Security Agreement* dated December 27, 2013 are attached as Exhibit C and Exhibit D, respectively, to the Declaration of Reuven Duer filed in support of the Motion.

Pursuant to the Joint Venture Agreement, PLC obtained a 40% shareholder interest in the Debtor and the right to appoint two members of the Debtor's board of directors (PLC's designees have since resigned from the board). Under the Intellectual Property Transfer Agreement, the Debtor was obligated to transfer the Collateral back to PLC if the Debtor failed to meet certain milestones and was not utilizing the IP as intended.

In April 2014, as part of an additional funding round, PLC invested another $425,000 in the Debtor and became the largest shareholder in the company. PLC (together with certain affiliates) currently holds approximately 50% of the Debtor's shares. The principal amount of PLC's secured debt against the Debtor remains $3,100,000, plus applicable fees, costs, and interest.

The Debtor breached its obligations under the PLC Note prepetition. Since February 2016, in order to preserve the Collateral, PLC has been required to fund patent maintenance fees and associated attorneys' fees on behalf of the Debtor totaling approximately $22,000.

B.   **The Debtor's Relationship with NMS**

NMS became a strategic partner of the Debtor in August 2014 pursuant to a *Product Development Agreement* dated as of August 1, 2014, which contemplated the joint development of a product for one specific application involving commercially viable forensic applications of immunoassays for the purpose of identifying the use of drugs. The Product Development Agreement was subsequently amended through an addendum dated June 2, 2015.

Consistent with the Product Development Agreement, as amended, NMS loaned the sum of $1,500,000 to the Debtor and received two Convertible Notes, one for $1,000,000 dated October 2014 and one for $500,000 dated June 2, 2015 (together, the "***NMS Notes***"). The obligations under the NMS Notes are secured by valid and perfected security interests in the Collateral. True and correct copies of the NMS Notes and associated *Security Agreement* executed in October 2014, as amended, are attached as Exhibit E and Exhibit F, respectively, to the Declaration of Reuven Duer filed in support of the Motion. The principal amount of NMS' secured debt against the Debtor remains $1,500,000, plus applicable fees, costs, and interest. The Debtor breached its obligations under the NMS Notes prepetition.

Pursuant to the *Intercreditor Agreement* dated as of October 28, 2014, as amended, PLC and NMS agreed that all liens and claims under the PLC Note would be treated as *pari passu* with the liens and claims under the NMS Notes. A true and correct copy of the Intercreditor Agreement, as amended, is attached as Exhibit G to the Declaration of Reuven Duer filed in support of the Motion.

Separately, NMS advanced additional funds to the Debtor on an unsecured basis totaling at least $479,000. These advances were intended to keep the Debtor afloat starting in late 2015 and included payment of the Debtor's payroll obligations to employees. On August 5, 2016, NMS commenced a lawsuit against the Debtor in the United States District Court for the Northern District of California, San Jose Division (Case No. 5:16-cv-04425-NC), seeking, among other things, to recover the sum of $479,000, plus damages for breach of the Product Development Agreement. A true and correct copy of NMS' lawsuit against the Debtor, including a copy of the Product Development Agreement, as amended, is attached as Exhibit H to the Declaration of Reuven Duer filed in support of the Motion.

### C. **Asserted Claims of Eurosimillas, S.A.**

In late 2014 or early 2015, a Spanish company, Eurosemillas S.A. ("***SpanCo***"), purportedly loaned $250,000 to the Debtor and received a note secured by the Collateral (the "***SpanCo Note***"). SpanCo has taken the position that its liens and claims under the SpanCo Note are *pari passu* with

the PLC Note and the NMS Notes pursuant to an intercreditor agreement. SpanCo, however, has been unable to provide a fully-executed copy of such intercreditor agreement.

### D. The Debtor's Lack of Funding and Termination of Operations

In April 2016, after failing to raise additional funds, the Debtor ceased operations, terminated its remaining employees, and vacated its premises.

On April 8, 2016, NMS terminated the Product Development Agreement and has retained its rights to continue to develop the product covered thereby independently. NMS has since hired certain of the Debtor's former employees and paid various trade claims against the Debtor.

As noted above, PLC has been required to pay certain patent maintenance expenses, including legal fees, associated with the IP in order to preserve such assets. If PLC had not made such payments on behalf of the Debtor, the value of the IP may have been lost forever.

At various times over the last few months, Movants have attempted to negotiate a consensual resolution of their disputes with the Debtor to no avail.

### E. The Debtor's Bankruptcy Filing on the Eve of Foreclosure

On June 30, 2016, Movants separately notified the Debtor of its breach of the PLC Note and the NMS Notes, respectively, and Movants accelerated the obligations due thereunder. True and correct copies of such notice letters are attached as Exhibit I and Exhibit J, respectively, to the Declaration of Reuven Duer filed in support of the Motion. The Debtor did not respond.

On July 14, 2016, Movants noticed a public foreclosure sale of the Collateral for August 12, 2016. A true and correct copy of such foreclosure notice is attached as Exhibit K to the Declaration of Reuven Duer filed in support of the Motion. Notice of the foreclosure sale was provided to the Debtor, parties asserting liens on the Debtor's assets, and other creditors.

On July 25, 2016, Movants served notice of the foreclosure sale upon over 20 parties that may potentially have an interest in acquiring the Collateral.

On July 27, 2016 and July 29, 2016, Movants published notice of the foreclosure sale in the San Jose Mercury News.

6

On July 29, 2016 and August 1, 2016, Movants published notice of the foreclosure sale in the San Francisco Chronicle.

Aside from Movants, no party has expressed any interest in submitting a bid on the Debtor's assets at the foreclosure sale.

On the eve of the noticed foreclosure sale, the Debtor filed for bankruptcy on August 11, 2016. The Debtor filed without any disclosure as to the Debtor's financial wherewithal or intentions in the case.

On the next day, August 12, 2016, Movants sent a letter to the Debtor seeking confirmation that the Debtor is administratively solvent and can adequately protect Movants' interests in the Collateral, particularly with respect to the maintenance of the IP. A true and correct copy of such correspondence is attached as Exhibit L to the Declaration of Reuven Duer filed in support of the Motion. Given that the Debtor was unable to fund patent maintenance fees prepetition and required Movants to fund such expenses to preserve the IP (plus payroll obligations), Movants need proof of the Debtor's financial wherewithal and access to qualified personnel with the appropriate expertise to maintain the IP. The Debtor has yet to substantively respond to Movants' request.

In sum, the Debtor filed this case with no employees, no money, and no strategy, aside from precluding Movants from continuing to exercise their rights as secured creditors under applicable non-bankruptcy law. The Debtor lacks even the basic funds and knowledge base to preserve and protect the Collateral. For these reasons, the Debtor cannot adequately protect Movants' interests in the Collateral and there is no reasonable likelihood of a successful reorganization of the Debtor.

## IV.

## LEGAL ARGUMENT

**A.** **The Automatic Stay Should Be Lifted for "Cause" - 11 U.S.C. § 362(d)(1)**

Section 362(d)(1) of the Bankruptcy Code provides that the automatic stay shall be lifted for cause, including the lack of adequate protection, after notice and a hearing. *See* 11 U.S.C. § 362(d)(1).

Section 362(d)(1) provides in relevant part:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –
>
> (1) for cause, ***including the lack of adequate protection of an interest in property of such party in interest*** . . .

11 U.S.C. § 362(d)(1) (emphasis added).

The term "cause" reflects a flexible standard, taking into account the particular facts and circumstances of the particular issue before the Court. *See In re Conejo Enters., Inc.*, 96 F.3d 346, 352 (9th Cir. 1996) (noting that "cause has no clear definition and is determined on a case-by-case basis") (internal citations and quotations omitted); *In re Brotman Med. Ctr., Inc.*, No. 08-1056, 2008 WL 8444797, at *5 (B.A.P. 9th Cir. Aug. 15, 2008) (same); *Delaney-Morin v. Day (In re Delaney-Morin)*, 304 B.R. 365, 369 (B.A.P. 9th Cir. 2003) (citation omitted); *Baldino v. Wilson (In re Wilson)*, 116 F.3d 87, 90 (3d Cir. 1997) (noting that section 362(d)(1) "does not define 'cause,' leaving courts to consider what constitutes cause based on the totality of the circumstances in each particular case."). "The bankruptcy court generally has broad discretion in granting relief from stay for cause under § 362(d)." *In re Edwards*, 454 B.R. 100, 107 (B.A.P. 9th Cir. 2011).

With respect to secured creditors, the purpose of providing adequate protection under section 362(d)(1) is to:

> insure that a creditor receives the value for which it bargained pre-bankruptcy. Adequate protection is, essentially, protection for the creditor to assure its collateral is not depreciating or diminishing in value and is evaluated on a case-by-case basis . . . The erosion, or threatened erosion, of a secured creditor's position "may be shown through evidence of declining property values, the increasing amount of the secured debt through interest accruals or otherwise, the non-payment of taxes or other senior liens, failure to insure the property, failure to maintain the property, or other factors that may jeopardize the creditor's present position."

*In re DB Capital Holdings, LLC*, 454 B.R. 804, 816-817 (Bankr. D. Colo. 2011) (granting relief from stay); *see also In re Gundrum*, 509 B.R. 155, 161-62 (Bankr. S.D. Ohio 2014) ("[a]n offer of adequate protection based on the speculative possibility that the funds will materialize simply does

not constitute adequate protection.") (citations omitted); *In re H.T. Pueblo Properties, LLC,* 11–24718, 2011 WL 6962754, at *8 (Bankr. D. Colo. Dec. 30, 2011) ("the Debtor's projections are overly optimistic and speculative, and not based on the Debtor's recent past and present performance. Such projections cannot demonstrate adequate protection pursuant to § 361."); *In re Chevy Devco*, 78 B.R. 585, 589 (Bankr. C.D. Cal. 1987) (finding that potential success is not sufficient for purposes of adequate protection; "the facts show that success is more fantasy than expectation.").

In the instant case, the Debtor has: (1) no money to fund the administration of this case, particularly the payment of critical patent maintenance fees necessary to preserve the Collateral, (2) no employees with the qualifications and expertise to maintain the IP or to maximize the value thereof, and (3) no prospect of proposing a viable plan. Further, there is no evidence that the Debtor has any equity in the Collateral. Movants' efforts to date to notice a public foreclosure sale have yet to yield any parties who have an interest in acquiring the IP.

The Debtor filed for bankruptcy on the eve of foreclosure in order to utilize the automatic stay as a delay tactic, preventing Movants from acquiring and protecting the Collateral, as they are entitled to do under applicable non-bankruptcy law. Because the Debtor lacks the financial wherewithal to maintain the IP and administer this case, Movants' interests in the Collateral are at risk of immediate diminution in value. Under these circumstances, there has been a complete failure of adequate protection and ample "cause" exists to lift the automatic stay under section 362(d)(1) of the Bankruptcy Code to allow Movant to exercise its rights against the Collateral.

B. **The Automatic Stay Should Be Lifted Due to the Debtor's Lack of Equity and Inability to Reorganize - 11 U.S.C. § 362(d)(2)**

Pursuant to section 362(d)(2) of the Bankruptcy Code, the court shall grant relief from the automatic stay with respect to an act against property where (1) the debtor lacks equity in such property, and (2) such property is "not necessary to an effective reorganization." 11 U.S.C. § 362(d)(2).

As to the first requirement, a debtor has no equity in property for purposes of section 362(d)(2) of the Bankruptcy Code when all the debts secured by liens on such property exceed the value of the property. *Stewart v. Gurley*, 745 F.2d 1194, 1195 (9th Cir. 1984). As the language of the statute simply refers to the debtor's "equity," which has been defined as "the amount or value of a property above the total liens or charges," all liens on the property must be aggregated to determine whether or not the debtor lacks equity. *Id.* at 1196.

Here, Movants' marketing efforts with respect to the Collateral have yielded no alternative buyers and there is no evidence that the Debtor has any equity in the IP above Movants' claims, which total $4,600,000 in principal obligations alone.

Where the debtor lacks equity in the property, the burden shifts to the debtor to prove that the property is necessary to an effective reorganization, which is the second requirement under section 362(d)(2). *See United Savings Assoc. of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 375-76, 108 S.Ct. 626 (1988). If the debtor does not meet its burden of proof, then relief must be granted to the creditor. *Id.*

Property is necessary for an effective reorganization for purposes of section 362(d)(2) if "the property is essential for an effective reorganization *that is in prospect*. This means . . . that there must be 'a reasonable possibility of a successful reorganization within a reasonable time.'" *United Sav. Ass'n Tex. v. Timbers of Inwood Forest Assoc., Ltd.,* 484 U.S. 365, 375–76 (1988) (emphasis in original) (quoting *In re Timbers of Inwood Forest Assoc., Ltd.,* 808 F.2d 363, 370–71 & n. 12-13 (5th Cir. 1987) (en banc)). In light of the standard espoused in *Timbers,* the Ninth Circuit Bankruptcy Appellate Panel has interpreted the "effective reorganization" requirement under § 362(d)(2) as requiring the debtor to prove that a proposed plan "is not patently unconfirmable and has a realistic chance of being confirmed.'" *Sun Valley Newspapers, Inc. v. Sun World Corp. (In re Sun Valley Newspapers, Inc.),* 171 B.R. 71, 75 (B.A.P. 9th Cir. 1994) (internal citations omitted).

The Debtor is unable to meet its burden because there is no reasonable prospect that the Debtor will be able to propose a viable plan in this case. The Debtor does not even have the financial wherewithal to administer this chapter 11 case or to satisfy basic accruing patent

10

maintenance obligations. The Debtor simply cannot show a reasonable probability of a successful reorganization any time in the foreseeable future. Movants therefore are entitled to relief from stay under section 362(d)(2) of the Bankruptcy Code.

### C. Alternatively, the Chapter 11 Case Should Be Converted to Chapter 7 Under Section 1112(b) of the Bankruptcy Code

Pursuant to section 1112(b) of the Bankruptcy Code, a court must convert a chapter 11 case to a chapter 7 case for cause on request of a party in interest and after notice and a hearing. Section 1112(b) of the Bankruptcy Code provides in pertinent part that:

> (b) (1) Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, **the court shall convert a case** under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

11 U.S.C. § 1112(b) (emphasis added); *see also In re Rubenstein*, 71 B.R. 777, 778 (9th Cir. B.A.P. 1987). Neither of the exceptions set forth in subparagraphs (b)(2) or (c) apply. Subparagraph (2) of section 1112(b) states that the court may not convert a case if it finds and specifically identifies "unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate" *and* the debtor or an interested party establishes a reasonable likelihood that a plan will be timely confirmed *and* that the grounds for converting include an act or omission by the debtor for which there is a justification and which will be cured within a reasonable period. 11 U.S.C. § 1112(b)(2).

Historically, under section 1112(b) of the Bankruptcy Code, bankruptcy courts are given wide discretion to convert a case to chapter 7 for cause. *In re Koerner*, 800 F.2d 1358, 1367 (5th Cir. 1986). However, the BAPCPA revisions to section 1112(b) make conversion or dismissal mandatory upon a finding of "cause" where such cause is a result of "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." *See* Bankr. Code § 1112(b)(1) (use of the word "shall" instead of "may"); 11 U.S.C. § 1112(b)(4) (defining the term cause). Where the position of creditors is continuing to erode and creditors are

11

DOCS_SF:91667.2 70872/001
Case: 16-52307    Doc# 15    Filed: 08/24/16    Entered: 08/24/16 15:01:57    Page 14 of 17

not likely to be satisfied if the case remained in chapter 11, sufficient grounds for conversion exist. *See Johnston v. Gem Dev. Co, (In re Johnston)*, 149 B.R. 158 (9th Cir. B.A.P. 1992) (debtor lacked ability to effectuate plan).

Movants request conversion of this case to chapter 7 because the estate faces substantial and continuing losses, primarily due to the Debtor's inability to fund basic patent maintenance fees. The Debtor also does not have any reasonable likelihood of proposing a viable plan. The Debtor is essentially defunct. It has no employees, no money, and no strategy. There is no purpose to be served by allowing this case to remain in chapter 11. In particular, given its lack of qualified personnel, the Debtor has no special knowledge or qualifications as to the IP that support maintaining this case as a chapter 11. The Debtor's creditors would be better served by the appointment of an independent fiduciary who could administer this estate without jeopardizing the Collateral as the Debtor has done.

1.  **Cause Exists to Convert the Case Under Section 1112(b)(4)(A) Based on Continuing Diminution of the Estate and the Absence of a Reasonable Likelihood of Rehabilitation.**

Section 1112(b)(4) defines "cause" for purposes of conversion or dismissal. Under section 1112(b)(4)(A), cause exists to convert or dismiss where there is both continuing loss to, or diminution of, the estate and the absence of a reasonable likelihood of rehabilitation. *Johnston*, 149 B.R. at 162; *In re Citi-Toledo Partners*, 170 B.R. 602, 606 (Bankr. N.D. Ohio 1994). Diminution of an estate exists where, for example, the debtor's business has ceased or the debtor's liabilities outstrip its assets. *Citi-Toledo Partners*, 170 B.R. at 606.

A debtor lacks "a reasonable likelihood of rehabilitation" where, for example, it lacks income, operating funds, employees, or "continuing revenue-generating activity." *See Citi-Toledo Partners*, 170 B.R. at 606-07, 609; *see also Johnston* 149 B.R. at 162 (debtor lacked income); *In Great American Pyramid Joint Venture*, 144 B.R. 780, 791 (Bankr. W.D. Tenn. 1992) (debtor lacked operating funds). Moreover, the fact that a liquidating plan could conceivably be proffered should not result in a finding that "a reasonable likelihood of rehabilitation" exists. "Although the Bankruptcy Code contemplates liquidating plans of reorganization in certain circumstances, the

12

DOCS_SF:91667.2 70872/001
Case: 16-52307    Doc# 15    Filed: 08/24/16    Entered: 08/24/16 15:01:57    Page 15 of 17

Court cannot equate the determination of whether [the debtor] possesses a reasonable likelihood of rehabilitation with [the debtor's] ability to effectuate a liquidating plan." *Citi-Toledo Partners*, 170 B.R. at 607.

The Debtor's principal assets consist of patents and patent applications that must be maintained. Yet, the Debtor has failed to produce any evidence of its financial wherewithal to satisfy basic patent maintenance fees or that the Debtor has the expertise on staff to maintain the IP, creating the risk that Movants' collateral will simply disappear and forcing Movants to continue to pay expenses (as they did prepetition) that reside with the Debtor in order to avoid disastrous consequences to their collateral position. Under these circumstances, the Debtor's estate faces continuing losses and diminution of value without a reasonable expectation that assets will be recovered. And there is no likelihood of rehabilitation or a plan of reorganization. Conversion of the case to chapter 7 is necessary because, absent a viable plan of reorganization or any prospects of such a plan, creditors cannot be assured that the value of the Debtor's assets will be preserved in chapter 11. Movants do not trust the Debtor's management and are unwilling to lend money to the Debtor, but may be willing to extend funds to an independent chapter 7 trustee who will be in a better position to efficiently liquidate the estate.

2. **Conversion to Chapter 7 is in the Best Interests of Creditors.**

Based on the Debtor's inability to propose a plan, much less to fund basic administrative expenses of the estate, such as critical patent maintenance fees, chapter 7 is in the best interests of creditors. Conversion to chapter 7 will establish a fiduciary who will promptly liquidate any available assets. Moreover, conversion to chapter 7 will provide an appropriate forum for winding down the remainder of the Debtor's affairs.

13

# V.

# CONCLUSION

For the reasons set forth above, Movants request that the Court enter an order:

1. Terminating the automatic stay under 11 U.S.C. § 362, as it applies to the Debtor, to permit Movants to exercise all of their rights and remedies against the Collateral, including foreclosure;

2. Waiving the 14-day stay set forth in Bankruptcy Rule 4001(a)(3);

3. Granting Movants leave to foreclose on the Collateral and otherwise enforcing their security interests, including any action necessary to obtain title to and possession of the IP;

4. Alternatively, converting this chapter 11 case to chapter for "cause" under 11 U.S.C. § 1112(b) with prejudice; and

5. For such other and further relief as the Court deems necessary and appropriate.

Dated: August 24, 2016

PACHULSKI STANG ZIEHL & JONES LLP

By: */s/ Maxim B. Litvak*
Maxim B. Litvak

Counsel for PLC Diagnostics, Inc. and NMS Labs