Maxim B. Litvak (CA Bar No. 215852)
PACHULSKI STANG ZIEHL & JONES LLP
150 California Street, 15th Floor
San Francisco, CA 94111
Telephone: 415/263-7000
Facsimile: 415/263-7010
Email: mlitvak@pszjlaw.com

Counsel for PLC Diagnostics, Inc. and NMS Labs

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| In re:<br><br>iNDx Lifecare, Inc.,<br><br>                Debtor. | Case No. 16-52307-DM<br><br>Chapter 11 – R.S. No. 1<br><br>**REPLY IN SUPPORT OF MOTION OF PLC DIAGNOSTICS, INC. AND NMS LABS FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 OR, ALTERNATIVELY, MOTION FOR ORDER CONVERTING THIS CASE TO CHAPTER 7**<br><br>Hearing Date: September 7, 2016<br>Time: 11:30 a.m.<br>Place: 280 South First Street<br>             Courtroom 3070<br>             San Jose, CA 95113<br>Judge: The Hon. Dennis Montali |

**TO THE HONORABLE DENNIS MONTALI, UNITED STATES BANKRUPTCY JUDGE, THE DEBTOR AND ITS COUNSEL, THE UNITED STATES TRUSTEE AND OTHER INTERESTED PARTIES:**

Movants PLC Diagnostics, Inc. ("*PLC*") and NMS Labs ("*NMS*" and together with PLC, "*Movants*") hereby file this reply in support of their motion [Docket No. 15] (the "*Motion*")[1] for an order granting relief from the automatic stay under 11 U.S.C. § 362(d) against Debtor iNDx Lifecare, Inc. (the "*Debtor*") to permit Movants to proceed to exercise their rights and remedies under applicable non-bankruptcy law, including foreclosure, with respect to the Debtor's intellectual property assets, primarily consisting of patents and patent applications. The Debtor has filed an opposition to the Motion [Docket No. 20].

## REPLY

The Debtor's objection proves the point that there is nothing here to reorganize. The Debtor is currently nothing more than a shell company that holds the IP. It has no operations, no employees, and no money. The Debtor is managed by a three-member board of directors that has no technical expertise or specialized knowledge with respect to the IP. And the Debtor has no apparent viable prospects for a re-start.

The Debtor vaguely refers to "several commitments for financing" that aggregate in excess of $1 million, yet offers no evidence of any such commitments despite specific request by Movants. These are the same promises that Movants have heard for months prior to the Petition Date, which have yet to yield any viable funding options. One of the Debtor's three remaining directors, Mohan Uttarwar, personally pledges to pay any costs associated with maintaining the IP, but does not provide any proof of funds. The Debtor relies on a declaration from a third party, Dr. Alok Aggarwal, to establish that the Debtor has the expertise and strategy to maintain the IP, leaving Movants to wonder who this person is supposed to be. Is he an expert for the Debtor? Someone who the Debtor proposes to hire and compensate? What are his qualifications and relationship to the Debtor and its principals? Why would Movants and this Court rely on the views of Dr. Aggarwal who has nothing to do with the IP? As for Mohan Uttarwar and the other two remaining directors of

---
[1] Capitalized terms not defined herein shall have the meanings set forth in the Motion.

the Debtor, Vijay Uttarwar (Mohan's brother) and Piyush Gupta, these gentlemen possess no technical expertise or specialized knowledge with respect to the IP – they are businessmen.

Other than paying lip service to the financial wherewithal of this estate, the Debtor offers no credible evidence that the Debtor has any money, qualifications, or strategy whatsoever. By all appearances, the Debtor lacks funds to pay for: (1) qualified employees or representatives to maintain and monitor the IP, (2) a marketing effort of the IP that the Debtor suggests is needed, or (3) the administrative expenses of this chapter 11 case. The Debtor has refused to respond to Movants' repeated inquiries as to its current cash balance and has obtained an extension of time to file its schedules to further delay such disclosure past the September 7 hearing date on the Motion. Aside from funds provided by Movants (and perhaps $250,000 from Eurosimillas), Mohan Uttarwar – who was formerly Chief Executive Officer of the Debtor – has been wholly unsuccessful in raising additional capital for the Debtor since mid-2014, and that was when the Debtor was still an operational company with a complete technical and business development team. There is no rational prospect for Mr. Uttarwar to be successful now with the Debtor as a shell company containing the IP, when he failed when the company was fully functional.

All that the Debtor can offer is that it intends to assert baseless litigation claims against Movants and their representatives. Such claims do not relate to the pending Motion and can be litigated just as easily by a chapter 7 trustee, if there are in fact any viable claims to pursue. Of course, Movants vehemently challenge the Debtor's allegations and, if suit is brought, Movants fully intend to defend themselves and assert counterclaims, as appropriate. Most blatantly, the Debtor asserts that PLC undermined Mohan Uttarwar's efforts to raise financing in 2015, when in fact the minutes of the Debtor's board of directors meeting dated September 10, 2015 reflect the exact opposite that the contemplated financing was authorized without opposition. *See* **Exhibit A** (Debtor's board minutes) attached hereto. But that is not the issue for purposes of the Motion. What is relevant here is that the Debtor has not established that it has the financial wherewithal to maintain the IP, adequately protect Movants, and otherwise remain in chapter 11.

2

Notably, the Debtor has no substantive challenge to Movants' liens or claims. Movants advanced cash and non-cash consideration to the Debtor, which the Debtor is obligated to repay. The Debtor references a UCC financing statement filed by Eurosimillas, S.A. on November 19, 2015, as dubious proof that stay relief would harm third parties.[2] But that financing statement was filed over one year *after* the financing statements filed by Movants against the same collateral. *See* **Exhibit C** (PLC's UCC financing statement) and **Exhibit D** (NMS' UCC financing statement) attached hereto. Hence, unless and until SpanCo can establish that it is the beneficiary of an intercreditor arrangement with Movants, the financing statements filed by Movants are first in time and take priority to the asserted liens of SpanCo. *See* Uniform Commercial Code § 9322. And even if SpanCo can establish that an intercreditor agreement exists, the rights that the secured creditors may have against each other have nothing to do with this estate.

For these reasons and those set forth in the Motion, Movants urge the Court to terminate the automatic stay under section 362 of the Bankruptcy Code, as it applies to the Debtor, or alternatively, convert this chapter 11 case to chapter 7 of the Bankruptcy Code.

Dated: September 6, 2016

PACHULSKI STANG ZIEHL & JONES LLP

By: */s/ Maxim B. Litvak*
    Maxim B. Litvak

Counsel for PLC Diagnostics, Inc. and NMS Labs

---

[2] The Debtor attached the UCC financing statement filed by SpanCo with the California Secretary of State. The Debtor is incorporated in Delaware. SpanCo also filed a financing statement against the Debtor with the Delaware Department of State on the same day, November 19, 2015. *See* **Exhibit B**.

3